### CLARKE *et al. v.* WHEATLEY, receiver.

1. It is not the right of a stranger to a pending cause to intervene therein, unless it is necessary to his protection that he be allowed to become a party to the litigation and thus afforded an opportunity to resist the rendition of a judgment which would operate to his prejudice. .

2. One who, though acting in entire good faith, illegally disposes of property belonging to another is liable to account therefor; and if, under any circumstances, he has an equitable right to demand that his unauthorized disposition of such property be ratified, he must, at least, make a proper tender of the proceeds arising therefrom, and assume the burden of showing that the value of the property was not greater than the amount realized therefor.

3. The decree entered by the court in the present case being more favorable to the losing party than he had any right to expect, it affords him no just cause for complaint.

Argued June 21,—Decided July 23, 1901.

Equitable petition.    Before Judge Reagan.    Sumter superior court.    December 19, 1900.

*Bacon, Miller & Brunson, W. F. Clarke,* and *W. M. Hawkes,* for plaintiffs in error.    *Allen Fort* and *W. P. Wallis,* contra.

LUMPKIN, P. J.    This court, at its March term, 1899, in the case of *Clarke, trustee, et al.* v. *Ingram et al.,* rendered a decision declaring that a conveyance which had been made by the Bank of Americus to W. W. Flannagan, a non-resident of this State, as trustee for three other banks in that conveyance named, was void.    See 107 *Ga.* 565.    For convenience, we will hereinafter refer to this conveyance as the "deed of trust," and to the three banks for whose benefit it was executed as the "foreign banks."    The opinion filed in that case sets forth in full the nature of the litigation upon which the decision mentioned arose.    Before it was announced, Flannagan, while assuming to act as trustee, and W. F. Clarke, who upon Flannagan's resignation as such had been appointed trustee in his stead, made divers collections of money upon choses in action belonging to the Americus bank, which had come into their hands under the deed of trust, and also sold to various persons much of the property which that deed purported to convey to Flannagan, as trustee.    Shortly after the remittitur from this court had been entered in the court below, Thornton Wheatley, the receiver of the Americus bank, filed in that court an equitable petition in which Clarke was named as the sole defendant.    This petition set forth a history of the litigation which had been had in the original case, stated the result thereof as above indicated, and contained prayers for direction and for an accounting and settlement by Clarke for and in respect of all the assets which had come into his hands as the successor of Flannagan in the alleged trust.    The receiver subsequently filed an amendment to his petition, wherein he prayed "the court

to grant an order authorizing him to institute suits to recover the
property specified in the" deed of trust "which had not come into·
his hands as receiver, and to give him such instructions and direc–
tions in the premises" as might be proper.   Clarke filed an answer
in which he undertook to set forth a full report of all his actings·
and doings while assuming to act as trustee.   This report disclosed
what assets of the Americus bank had been turned over to him by
Flannagan, what sums of money had been realized therefrom, and
the disbursements which had been made out of the fund thus aris–
ing, etc., etc.   By way of defense, Clarke alleged that he had in·
good faith made collections upon divers choses in action coming·
into his hands as trustee, and had sold certain property, both real
and personal, described in the deed of trust, and therefore was not–
in a position to turn over to the receiver all of the assets of the
Americus bank which had come into his possession as trustee.   He·
undertook to assert, in this connection, that, as the sales of prop–
erty made by himself and Flannagan were fairly conducted and·
the sums of money thereby realized represented the highest price·
for which the property could have been sold, it was "to the interest
of all parties that the acts of said trustees in making sales and col-
lections under said trust deed should be solemnly decreed by the·
court to be ratified and confirmed, so as to quiet the titles of the
various purchasers and promptly set at rest all question of litigation
concerning the same."   By way of conclusion, Clarke further al-–
leged that he was "ready to account for all property and moneys
that have come into his hands, and has been ready and willing to
come to a prompt settlement with said receiver from the time he
was advised of the decision of the Supreme Court in this cause;·
but the said receiver has never called upon him for such settlement,·
unless this petition, which is a wholly unnecessary proceeding, is to·
be so regarded."   The only specific prayer contained in Clarke's an–
swer was in the following words:  "And, having fully answered,·
respondent prays that he be hence discharged."

To this answer Wheatley, the receiver, demurred upon the fol-–
lowing grounds:  "First:  There is no tender into court of any of
the proceeds realized from the sale of the real estate or the collec-
tions of the choses in action,  . .  and the trustee has no right
to ask that the collections of money from the sale of real and per-
sonal property and choses in action be withheld and the disposition·

thereof be confirmed by the court. Second: The answer and re-
sponse are wholly insufficient in law and equity," in that "the re-
spondent does not propose to do equity in order to have his acts
and conduct ratified in the premises, equity requiring immediate
surrender of any and all assets, or the proceeds thereof, which have
passed through his hands or his predecessor's hands, before con-
firmation of his actings and doings in the premises. Third: His
report shows that the larger part of the assets realized out of the
assets derived from the Bank of Americus are in the hands of the
beneficiaries mentioned in the deed of trust, who are non-residents,
and that the said assets are not proposed to be subject to the ju-
risdiction of the court."

Before the case came on for trial, the foreign banks presented to
the court a petition in the nature of an intervention, praying that
they be made parties and that they be granted certain relief to
which, for reasons assigned, they alleged they were entitled. After
characterizing their petition as an "intervention in the nature of
an answer to the above-mentioned petition of said receiver," they
proceeded to state that "Your respondents hereby adopt the answer
of their corespondent, W. F. Clarke, so far as the same is pertinent
to this their answer." The averments therein set forth were, in
substance, as follows: The receiver has no right to proceed against
Clarke for an accounting and settlement, since, as is fully shown
by his report, "there has been no sale made and no collection made
under the terms of said trust deed that is attacked  .  .  or is
sought to be set aside and cancelled on any grounds whatever."
On the contrary, "all the acts of said Clarke and his predecessor,
Flannagan, as disclosed by the report attached to said Clarke's an-
swer, have been in an economical and orderly administration of said
trust, and have been a prudent and skillful realization of funds
from" the assets of the Americus bank; and accordingly, "the acts
of said Clarke and Flannagan should, in the interest of all parties
in this litigation, be ratified" and confirmed by the court. "The
said Thornton Wheatley, receiver, has in his possession money and
other assets which were never covered by the said trust deed and
which should be fully reported to the court, with an accurate esti-
mate of the value thereof, before any order or judgment is passed
under the receiver's petition;" and he "should be required, before
such judgment is rendered, to come to a settlement with the said

W. F. Clarke, receiving from him all the money and the assets now in his hands which have not been paid over to these respondents as the beneficiaries under the said trust deed, which unadministered assets are fully shown by his report, and said receiver should then report such assets to the court, with an accurate estimate of the value thereof. Or, these defendants submit that even a better course to be pursued would be for the said receiver, under the order of the court, to convert all such assets into cash and then report the same to the court before any order or decree is rendered upon the said receiver's petition." The court should then "finally determine and fix the various allowances to be made to the receiver and the counsel in this case, and ascertain the court costs and all other expenses of administration, so as to know the aggregate amount thereof to be paid out of the said funds." The court should also undertake to "ascertain the various amounts that have been received by these respondents upon their respective claims arising from the properties covered by said trust deed, so as to definitely ascertain the percentage or proportion of the credits that the respondents have heretofore received from said source." They "have received, approximately, seventeen thousand dollars through the hands of Flannagan and Clarke, trustees, which amounts have been entered as credits upon their respective claims; and they now and here propose to submit to the court, for the most careful scrutiny and examination, the entire transactions of the said Flannagan, former trustee, and of said Clarke, showing the sales and collections made, the disbursements of necessary expenses, and the actual amount paid over to these respondents as a credit upon their respective claims. Respondents submit that this examination should be had and the respective amounts determined before the prayers of the receiver's petition should be allowed by the court. Respondents further aver that the funds which will be in the said receiver's hands after all the unadministered assets described above have been converted into money will be sufficient, even after allowing reasonable compensation to the various officers and counsel, to pay to the general creditors, other than these respondents, an amount sufficient to make that class of creditors equal, in the pro rata amounts received upon their respective debts, to these respondents;" and therefore no "decree should be rendered upon said receiver's petition, either authorizing him to repudiate the sales and collections made by the

said trustees and bring suit to recover the said assets, or . . requiring these respondents to pay back into the said receiver's hands the said sum of seventeen thousand dollars received by them as above stated, until the said receiver shall make it affirmatively appear to the court, by competent evidence, that the funds in his hands, after a full settlement with W. F. Clarke, trustee, will not be sufficient to equalize with these respondents those creditors who have not yet received any payments upon their demands." In the event the receiver should, "upon the hearing of his said petition, show to the court that the funds in his hands are not sufficient for the purpose above recited, then he should" be required to further show "the extent of said deficiency and what amount it was necessary for these respondents to refund or repay to him as receiver in order to equalize the class of creditors above described; and the court should then, in its decree upon his said petition, require these respondents to pay over to the said receiver only such amount as would be required for the purpose just named." The estimates of value placed upon "the properties covered by said trust deed" at the time it was executed "were, in many instances, fictitious," these properties not being, in point of fact, "at any time worth the large sum which they were originally rated at." On the contrary, "the said Clarke's report is the highest and best proof of the actual values of said properties, as appears from the amounts realized therefrom."

Following the foregoing allegations was a prayer on the part of the foreign banks "that all of the steps above outlined by them in regard to ascertaining the true funds in the receiver's hands from all of the assets of" the Americus bank "be all had and taken before any decree" was entered by the court, and that "the relief claimed by them above be granted." The trial judge, after hearing argument from them as to their right to become parties to the litigation with a view to securing the relief sought, refused to allow them to intervene; and to this ruling they excepted. He thereupon sustained the demurrer to the answer filed by Clarke, and entered a decree in favor of the receiver. Being dissatisfied with the disposition thus made of the case, Clarke also excepted. We shall first direct our attention to the complaint made by the foreign banks that the court erred in not allowing them to intervene, and then dispose of the questions presented by the assignments of error upon which Clarke relies.

1. At the time Wheatley, as receiver, commenced proceedings against Clarke, it had already been finally adjudicated, not only as against him but also as against the three foreign banks, that the deed of trust above referred to was an absolute nullity. As a result of this adjudication, Clarke became liable to account for all the assets of the Americus bank which had come into his hands while assuming to act as trustee for the foreign banks. The receiver, as the representative of the creditors at whose instance this instrument was set aside, was under a positive duty to recover, if possible, the illegally scattered assets of the Americus bank, including those which passed into the possession of Clarke and for which he had failed to account. It was unquestionably proper for the receiver to endeavor to compel Clarke, as well as all others who had unlawfully acquired property belonging to that bank, to make prompt and full restitution. This the receiver was seeking to do when the foreign banks undertook to interpose and tie his hands. They were, it is true, creditors of the Americus bank, and, as such, had a right to object to the receiver's taking steps which would operate to the prejudice of its unsecured creditors. But, as has been seen, the receiver was simply endeavoring to discharge his positive duty in the premises, and the proceeding instituted by him was, beyond all question, not only proper but essential to the protection of such creditors. Certain it is that the foreign banks failed signally to disclose any reason for apprehending that they, in their capacity of creditors, would be prejudiced in the event Clarke was made to account for property which had been illegally disposed of by him. Any suggestion that they might be would seem to be wholly without foundation. As matter of fact, they did not make any such claim. On the contrary, it was solely in their capacity as beneficiaries under the deed of trust that they asserted a right to intervene in the pending cause and arrest the action of the court upon the receiver's petition. They were non-residents; he was not seeking to recover the money which had been turned over to them by Clarke, and no judgment against him could possibly affect their rights. This being so, it was not necessary to their protection that they should be allowed to become parties to the litigation; and, of course, it was not their privilege, as mere volunteers, to champion the cause of Clarke and lend him aid and comfort in his contest with the receiver. There is no force whatever in the argument that

if judgment were rendered against Clarke and he should be com-
pelled to make restitution, he would have a right of action against
the foreign banks to recover the money he had, while acting as
their trustee, improperly paid over to them. If Clarke failed to
interpose a proper defense and suffered judgment to be rendered
against him upon a demand which he might have successfully re-
sisted, these foreign banks would be in a position to assert that they
could not justly be called upon to reimburse him for any loss thus
sustained. On the other hand, if he should rightly be held to ac-
count for the assets coming into his hands, the proceeds of which
he had in good faith, though improperly, delivered to them, they
should, without forcing him to litigate further, restore to him the
funds thus received by them. Our conclusion therefore is, that
the proposed intervention presented in behalf of the foreign banks
amounted to neither more nor less than an effort on their part to
force the receiver, against his will, to sue them for $17,000, to no
other end than that they might thus be afforded an opportunity to
interpose the wholly untenable defense that he had no right to
recover any portion of that sum without showing that, as debtors,
they were liable for an amount in excess of that which they, as un-
secured creditors, would, on a final distribution amongst all cred-
itors of the funds realized by the receiver from the assets of the in-
solvent Americus bank, ultimately be entitled to receive upon the
claims which they held against it. Under the circumstances dis-
closed, the receiver certainly had the privilege of declining to bring
a suit against the foreign banks, however much the latter may have
desired the institution thereof.

2, 3. The defense relied on by Clarke was nothing short of re-
markable. It was apparently based upon the theory that as he
had, while assuming to act in behalf of the foreign banks, been
faithful to the trust imposed upon him by the deed executed in
their favor, he could not be legally called upon to account to the
receiver for the misapplied assets of the Americus bank, notwith-
standing that deed had been by the court declared wholly inop-
erative and void as against the creditors who prevailed in their
effort to have it set aside. In framing his answer, Clarke seems
to have totally ignored the fact that, by reason of his alleged faith-
fulness as trustee, the major portion of the assets of that bank were
illegally disposed of and the proceeds arising therefrom carried be-

yond the jurisdiction of the court and placed in the hands of parties. not entitled to receive the same. That the creditors in whose behalf the receiver sought to recover these assets, or the proceeds thereof, were dissatisfied with the disposition made by Clarke of property belonging to the insolvent bank which had been unlawfully delivered to him, does not afford cause for surprise. Whether or not he had been faithful to the foreign banks was a matter as to which these creditors had no concern. He was not called upon by the receiver to answer in what manner he had performed his duty as a trustee. On the contrary, he was called upon, as a person whom the court had characterized as one who had without any shadow of authority intermeddled with the affairs of the Americus bank, to account for assets belonging to it of which he had wrongfully acquired possession. He was, beyond the possibility of doubt, liable for all the assets of the bank thus coming under his control. While it was proper for him to state in his answer that it was not within his power to restore all of these assets, he clearly had no right to ask that the court ratify and confirm his unauthorized disposition thereof, without at least offering to pay into the registry of the court the proceeds arising from the same, and assuming the burden of showing that the property disposed of by him did not exceed in value the amount realized thereon. When, by way of demurrer to his answer, his attention was called to the fact that he had omitted to come up to this reasonable requirement, he displayed no disposition to do equity, and thereby forced the court to hold that there was no merit in the defense which he sought to interpose.

It appears that when the case came on to be heard, the receiver elected to take the assets of the Americus bank which still remained in the hands of Clarke, but "not to confirm the sale of the real and personal property or the collection of the choses in actions" made by him or by Flannagan. Accordingly the court, in framing its decree, merely imposed upon Clarke the duty of surrendering possession of such only of the assets of that bank which he in his answer admitted were still in his hands, and expressly provided that he should not be called upon to account for " any proceeds derived from the sale of any of the real estate made by" him or by Flannagan. It will thus be seen that, relatively to the receiver, Clarke practically escaped all liability growing out of his unauthorized dis-

position of property which was the subject-matter of controversy. Nevertheless he complains that the court further provided in its decree that the receiver should proceed against all other persons who held adversely to him assets of the Americus bank which were subject to the claims of its creditors. This direction to the receiver was, Clarke contends, " erroneous in that it makes him personally liable to all persons from whom he has made collections of money under the trust deed, whether in making sales or in collecting the choses in action." The reply to this contention is, that one who, with however much good faith, undertakes to sell or otherwise deal with property which does not belong to him can not reasonably hope to escape liability if, because of his unauthorized acts in relation thereto, innocent parties are made to suffer loss.

*Judgment affirmed. All the Justices concurring.*